The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

William CAMPBELL, Defendant,

and concerning

Albert M. O'Neil, as Attorney in Fact
for the American Bonding Company,
Surety-Appellant.

No. 80CA0565.

Colorado Court of Appeals,
Div. II.

June 4, 1981.

Rehearing Denied June 18, 1981.

Certiorari Denied Sept. 8, 1981.

J. D. MacFarlane, Atty. Gen., Richard F.
Hennessey, Deputy Atty. Gen., Mary J.
Mullarkey, Sol. Gen., Morgan Rumler, Asst.
Atty. Gen., Denver, for plaintiff-appellee.

Robert S. Berger, Denver, for surety-appellant.

VAN CISE, Judge.

The American Bonding Company, the surety on an appearance bond, appeals the denial of its motion for exoneration from liability and the entry of judgment in the full amount of the bond for non-appearance of the defendant, William Campbell. We reverse.

The surety executed a $1,200 bail bond for the release of defendant. When defendant failed to appear in court, as ordered, the court declared the bond forfeited and issued a citation to show cause why judgment should not be entered against the surety. See § 16–4–110, C.R.S. 1973 (1978 Repl. Vol. 8); Crim. P. 46(a)(9).

Shortly thereafter, the surety located the defendant in Rapid City, South Dakota, and notified the local authorities that he was fugitive from Colorado. The defendant was arrested, and proceedings were commenced under the Uniform Criminal Extradition Act, which has been enacted by both states. See § 16–19–101 et seq., C.R.S. 1973 (1978 Repl. Vol. 8), and S.D. Compiled Laws Ann. § 23–24–1 et seq. Initially, defendant

indicated he would waive extradition; later he recanted.

Some papers were forwarded from Colorado, but more were needed before the South Dakota governor would issue an extradition warrant. Additional time was granted by the South Dakota court for completion of this processing. However, as stated by the People in their brief, "a foul-up in the paperwork occurred between Colorado and South Dakota." On the expiration of the extended period without delivery of the governor's warrant, the South Dakota court dismissed the proceedings and released the defendant. He promptly disappeared.

The surety learned of defendant's pending release and attempted to obtain a certified copy of the fugitive warrant in order to enable the surety to apprehend defendant itself. This request was denied by the Denver sheriff's department, apparently because of the pending extradition. The surety's local representative went to South Dakota and tried to relocate the defendant there, but was unsuccessful.

Thereafter, at the show cause hearing, the trial court denied the surety's motion for exoneration from liability, stating:

"This court has no intention of exonerating from liability. The purpose of a bond is to produce the defendant in court. There may be a laudable and explainable excuse for his not being here, but that certainly doesn't comply with the requirements of the warrant. The defendant is not here."

Judgment was then entered.

On appeal, the surety first contends that judgment should not have been entered on the forfeiture. We agree.

█ Defendant failed to appear at the scheduled hearing, and there was no valid reason or excuse given for his absence. Therefore, forfeiture of the bond was properly ordered. See People v. Jaramillo, 163 Colo. 39, 428 P.2d 67 (1967); Union Benefit Fire Insurance Co. v. People, 160 Colo. 211, 416 P.2d 368 (1966). However, in this case it appears that as a result of the efforts of the surety, the defendant was apprehended and taken into custody by the South Dakota authorities, and extradition proceedings for his return to Colorado were commenced— all within thirty days from the date of the forfeiture and prior to the entry of any judgment on the bond. See § 16–4–108(1)(c), C.R.S. 1973 (1978 Repl. Vol. 8); Crim. P. 46(a)(7)(I)(C). It was the act of, or failure to act by, the states of Colorado and South Dakota, and no fault of the surety, that resulted in the defendant not being returned to Colorado custody and, instead, being released in South Dakota. See Allison v. People, 132 Colo. 156, 286 P.2d 1102 (1955).

As stated in Owens v. People, 194 Colo. 389, 572 P.2d 837 (1977), a case in which the defendant failed to appear in March, voluntarily returned to Colorado in December, and was then delivered by the surety to the sheriff:

"The decision as to whether or not a forfeited bond should be remitted is entrusted to the trial court's discretion by section 16–4–109(3), C.R.S. 1973 and Crim. P. 46(a)(8)(III). Both of these provisions state that bond forfeitures may be vacated 'if it appears that justice so requires.' This standard is essentially an appeal to the conscience of the court. No clear rule can be set down which will guide the trial court in every case since the facts and circumstances of each individual case must be considered in their totality. No one factor will be determinative in all cases."

The court in Owens then held that the policy of this state with respect to forfeited bonds was as stated in Allison v. People, supra:

" 'That the state may be relieved of the burden of keeping an accused person; that the innocent shall not be confined pending a trial and formal acquittal; that, in cases of flight a recapture may be aided by the bondsmen who, it is presumed, will be moved by an incentive to prevent judgment or, if it has been entered, to absolve it and to mitigate its penalties. To accomplish these things and others, courts have been liberal in vacating judgments entered on bail bonds, exercising always a broad discre-

tion and in proper cases preserving the equities of the public by deducting such costs and expenses as may have been incurred by the state. To hold otherwise would discourage the giving of bail and defeat the manifest purpose of the statute.' "

And the *Owens* court further noted that " '[t]he enriching of the public treasury is no part of the object at which the proceeding is aimed.' "

Applying these policies to the unique facts in the instant case, the trial court abused its discretion in denying the surety's motion for exoneration and in entering judgment for the full amount of the bond. *See Owens v. People, supra.* The surety's liability should be limited to the costs and expenses incurred by the state in seeking to locate and produce the defendant from the date of his initial failure to appear, to and including the date of his release in South Dakota.

■ There is no merit to the surety's contention that there should have been credited against the judgment the expenses it incurred in searching for and locating defendant.

The judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

PIERCE, J., concurs.

KELLY, J., dissents.

KELLY, Judge, dissenting.

I respectfully dissent.

The majority states that it was the action of Colorado and South Dakota that resulted in the surety's failure to surrender the defendant. I disagree.

The method for surrendering a defendant by a surety is clearly set forth in § 16–4–108, C.R.S. 1973 (1978 Repl. Vol. 8). The defendant may be surrendered at any time, even while the defendant is in custody on another offense. *People v. Jaramillo*, 163 Colo. 39, 428 P.2d 67 (1967). Here, the surety could have exonerated itself by surrendering the defendant while he was in custody in South Dakota. This could have been done by asking leave of the court to be

removed from the bond and then by delivering a certified copy to the sheriff. *People v. Jaramillo, supra.*

Moreover, the denial of the warrant by the sheriff's office is immaterial. The surety did not need a certified copy of the alias warrant to apprehend the defendant itself. Section 16–4–108(1)(c), C.R.S. 1973 (1978 Repl. Vol. 8); *see also People v. Loomis*, 60 Colo. 202, 152 P. 143 (1915); § 16–3–108, C.R.S. 1973 (1978 Repl. Vol. 8). After locating the defendant, the surety could have brought him back itself, rather than using extradition proceedings. It also could have brought the defendant back as soon as he was released by the authorities in South Dakota.

The surety had the opportunity to return the defendant to Colorado itself, but chose not to do so. *See Union Benefit Fire Insurance Co. v. People*, 160 Colo. 211, 416 P.2d 368 (1966). Thus, it was the surety's failure to act which prevented it from producing the defendant.

Accordingly, I would affirm.