The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Javier ESCALERA, Defendant,

and

Kathy Ballwebber, Surety–Appellant.

No. 04CA1097.

Colorado Court of Appeals, Div. A.

June 30, 2005.

Rehearing Denied Aug. 18, 2005.

John W. Suthers, Attorney General, Katherine A. Hansen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Law Office of Charles W. Elliott, Charles W. Elliott, Denver, Colorado, for Defendant and Surety–Appellant.

STERNBERG *, J.

Surety, Kathy Ballwebber, appeals from the trial court order denying her motion to set aside a judgment entered against her on the forfeiture of a bail bond she posted for the release of defendant, Javier Escalera. We reverse and remand with directions that the trial court set aside the judgment and exonerate surety on the bond.

On September 12, 2003, surety posted a $30,000 bond securing the appearance of defendant in an Adams County criminal proceeding. Defendant had previously been released from custody on bonds posted by other sureties and had failed to appear.

On October 14, 2003, defendant appeared with counsel for a hearing at which the trial court scheduled a subsequent motions hearing for December 12, 2003. The following day, defendant was apparently arrested and taken into custody in Jefferson County.

Defendant appeared "in custody" on December 12, 2003, for the scheduled motions hearing in Adams County, and the court set a trial date of January 28, 2004. It appears that defendant was then still being held by Jefferson County, as evidenced by the hearing minute order stating that defendant "may need a writ from Jeffco."

One week later, on December 19, 2003, the Jefferson County Sheriff's Office released defendant to the custody of the United States Immigration and Naturalization Service (INS), which, on or about December 30, 2003, deported defendant to Mexico. The deporta-

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2004.

tion order specifically prohibited defendant from entering or attempting to enter the United States at any time.

When defendant failed to appear for his scheduled trial in Adams County on January 28, 2004, the trial court ordered the bond forfeited. The trial court later entered judgment on the forfeiture.

Shortly thereafter, surety moved to set aside the judgment on the ground that defendant's deportation had rendered her powerless to secure his appearance at trial. The People opposed the motion.

The trial court denied surety's motion after noting that defendant's failure to appear was "not because of any increase in risk caused by this court." The trial court also later denied surety's motion seeking to stay execution on the judgment. This appeal followed.

■ Surety contends that, because the state surrendered defendant to INS officials who then deported him, the trial court abused its discretion in refusing to set aside the forfeiture judgment. Under the circumstances presented here, we agree.

Section 16–4–112, C.R.S.2004, enacted in 1999 and applicable to forfeiture proceedings involving compensated sureties, authorizes a trial court to order that a "bail forfeiture judgment" be set aside upon such conditions as the court may impose, "if it appears that justice so requires." Section 16–4–112(5)(h), C.R.S.2004.

■ This standard is essentially an appeal to the conscience of the court. No clear rule can be set down that will guide the trial court in every instance because the court must consider the totality of facts and circumstances in each individual case. *See Owens v. People*, 194 Colo. 389, 572 P.2d 837 (1977)(applying substantially similar language of § 16–4–109(3), C.R.S.2004, which allows the trial court to set aside prejudgment forfeitures), *disapproved in part by People v. Caro*, 753 P.2d 196 (Colo.1988); *see also People v. Soto–Gallegos*, 953 P.2d 946 (Colo.App.1997).

■ In exercising its discretion, a trial court should be mindful of the policies concerning bail, including the policy that sureties should not be penalized when it appears they are unable, through no fault of their own, to perform the condition of the bond. *See Owens v. People, supra; see also Allison v. People*, 132 Colo. 156, 286 P.2d 1102 (1955); *Smith v. People*, 67 Colo. 452, 184 P. 372 (1919).

■ In *People v. Bustamante–Payan*, 856 P.2d 42 (Colo.App.1993), a division of this court stated:

[T]he trial court should consider: (1) the willfulness of the defendant's violation of bail conditions; (2) the surety's participation in locating or apprehending the defendant; (3) the cost, inconvenience, and prejudice suffered by the state as a result of the violation; (4) any intangible costs; (5) the public interest in ensuring a defendant's appearance; and (6) any mitigating factors. These factors encompass the principle that generally only acts of God, of the state, or of law will relieve a surety from liability."

*People v. Bustamante–Payan, supra*, 856 P.2d at 44–45 (citation omitted); *see Allison v. People, supra.*

■ The trial court's decision whether to set aside a bond forfeiture judgment is reviewed on an abuse of discretion standard. *See People v. Bustamante–Payan, supra.*

Here, defendant had already made two appearances under the bond issued by surety, and he did not appear at trial because of the decision by the Jefferson County Sheriff's Office, an arm of the state, to transfer custody of him to the INS and defendant's subsequent deportation. Under these circumstances, defendant's failure to appear was not "willful" in the traditional sense as if he had fled the jurisdiction.

Nor is it realistic that surety could have done anything to locate or apprehend defendant and cause him to appear for trial once the custody transfer and deportation had occurred. *See People v. Am. Sur. Ins. Co.*, 77 Cal.App.4th 1063, 92 Cal.Rptr.2d 216 (2000)(rejecting argument that surety could have lawfully surrendered deported defendant). *But see In re Bond Forfeiture*, 208 Ariz. 368, 93 P.3d 1084 (Ct.App.2004)(uphold-

ing forfeiture based in part on surety's failure to demonstrate that it had attempted to locate defendant in Mexico or file petition to have him "legally returned" for trial).

The state had an interest in ensuring defendant's appearance at trial and was prejudiced by defendant's failure to appear. However, an arm of the state, the Jefferson County Sheriff's Office, played a pivotal role in preventing defendant from appearing when it transferred custody of him to the INS for deportation.

We also find it significant that nothing in the record indicates that surety either knew, or reasonably should have known or suspected, that defendant was illegally in this county and, therefore, faced the possibility of deportation. Defendant listed a Colorado address and claimed to have lived in Colorado for the previous six years. He further claimed that prior to residing in Colorado, he had lived in California for his "entire life." Indeed, it appears that until surety posted bond, the Adams County Sheriff's Office had no knowledge of any immigration holds or detentions concerning defendant, as demonstrated by its repeatedly releasing defendant on bond. *See People v. Am. Sur. Ins. Co., supra* (law enforcement officials are presumed to have greater access than sureties to immigration status of defendants).

After considering all the circumstances, as well as the fact that the trial court based its decision solely on its having done nothing to increase the risk of nonappearance, we conclude that the trial court abused its discretion in not setting aside the forfeiture judgment. *See United States v. Laura–Cota,* 262 F.Supp.2d 1118 (S.D.Cal.2003)(by deporting defendant, government substantially increased risk of forfeiture and materially breached implied promise not to interfere with covenant between defendant and surety); *People v. Am. Sur. Ins. Co., supra* (surety was entitled to exoneration where defendant who was released on bail, was subsequently deported based upon prior conviction and was unable to return to this country); *People v. Alvarez,* 94 Misc.2d 334, 404 N.Y.S.2d 509 (Sup.Ct.1978) (state's failure to take any affirmative action to prevent defendant's deportation, with knowledge of the

probable consequences, was a tacit, if not outright, approval thereof, which estopped it from opposing exoneration of surety on bond); *see also People v. Gonzales,* 745 P.2d 263 (Colo.App.1987) (reversing forfeiture judgment against surety because sheriff's department had not released defendant into legal custody of surety, but rather had transferred defendant directly to INS, from whose custody defendant had escaped); *cf. In re Bond Forfeiture, supra* (forfeiture proper on bond posted for deported defendant where surety knew defendant was Mexican citizen and failed to demonstrate attempts to locate defendant in Mexico or return defendant for trial).

The order is reversed, and the case is remanded to the trial court with directions to set aside the judgment on the forfeiture and exonerate surety on the bond.

Chief Judge DAVIDSON and Judge WEBB concur.